UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DONNA WEKWERT,

       Plaintiff,

v.                                                CASE No. 8:08-CV-471-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and contains no reversible error, it will be affirmed.

### I.

The plaintiff, who was forty-five years old at the time of the administrative hearing and who has a high school education (Tr. 406, 409),

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

has worked as a waitress, newspaper carrier, mail carrier, and roadside litter remover (Tr. 75). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to "chronic back pain and neck pain secondary to bulging discs, generalized muscular skeletal pain most likely due to fibromyalgia, chronic fatigue, chronic obstructive pulmonary disease, major depressive disorder, generalized anxiety disorder, panic disorder, social phobia, alcohol dependence and insomnia" (Tr. 145).[2] The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of mild depression and anxiety, alcohol dependence, and mild degenerative disc disease with fibromyalgia (Tr. 15). The law judge concluded that these impairments restricted the plaintiff to light work in a low stress environment with limited interpersonal interactions and that does not require her to perform more than simple tasks or to understand and remember more than simple instructions (Tr. 17). The law judge determined that these

---

[2]According to the Commissioner, her application for supplemental security income payments and associated notices are not included in the transcript (Doc. 21, p. 1 n. 1).

limitations prevented the plaintiff from performing past work (Tr. 20). However, based upon the testimony of a vocational expert, the law judge determined that the plaintiff could perform other work that exists in significant numbers in the national economy, such as dog bather, marker, and hand packager (Tr. 21-22). The law judge therefore decided that the plaintiff was not disabled (Tr. 22). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on three grounds: (1) the law judge failed to pose a hypothetical question to the vocational expert that accurately described the plaintiff's impairments; (2) the law judge failed to consider properly the plaintiff's subjective complaints including pain; and (3) the law judge failed to evaluate properly the plaintiff's allegations of pain due to fibromyalgia. These contentions overlap significantly. None warrants reversal.

The plaintiff argues first that the law judge failed to pose a hypothetical question to the vocational expert that encompassed all of her impairments and limitations (Doc. 20, pp. 7-9). The plaintiff contends that

the law judge should have included (1) her inability to stand or walk for more than a few blocks; (2) a sit/stand option; (3) her need to take frequent breaks to stretch and change positions; (4) physical limitations from the pain of her fibromyalgia and lumbar disc disease; (5) her inability to concentrate or stay on task; and (6) her frequent panic attacks (id., p. 9).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

In this case, the law judge's hypothetical question reflected his residual functional capacity determination (see Tr. 17, 423). Consequently, if the law judge erred, it was not with respect to his hypothetical question, but with respect to his determination of the plaintiff's residual functional capacity. The plaintiff, however, has failed to demonstrate that the law

judge's finding concerning the plaintiff's residual functional capacity was erroneous.

No doctor, whether treating, examining, or reviewing, opined that the plaintiff was disabled. Moreover, with one arguable exception, the law judge correctly stated that "no treating or examining physician opined that the claimant had any greater restrictions" than those he found to exist (Tr. 20). Indeed, a treating orthopedic specialist, Dr. George A. Morris, III, stated "I do not see anything going on there that would need any type of significant treatment and basically I do not see anything going on there that would limit her in her activities" (Tr. 170).

As indicated, in connection with the hypothetical question and the plaintiff's residual functional capacity, the plaintiff stated that her functional restrictions should include a sit/stand option and frequent breaks to stretch and change positions (Doc. 20, p. 9). These limitations purport to be based upon an opinion by Dr. Carlos A. Zubillaga, a neurologist (id.).

Dr. Zubillaga examined the plaintiff on one occasion and stated his diagnostic impression of "[g]eneralized musculoskeletal pain, particularly paraspinal, most likely due to fibromyalgia" (Tr. 179). Dr. Zubillaga stated

that "[s]he is seeking a different type of job. For fibromyalgia the main recommendation would be that patient be allowed to do stretches periodically and change of position frequently" (id.).

The plaintiff argues in her third issue that the law judge did not discuss Dr. Zubillaga's findings on examination or his opinion about stretching and changing position (Doc. 20, pp. 15-16). This argument is incorrect. While the law judge did not mention Dr. Zubillaga by name, he did refer to his examination and report (Exhibit 5F) (Tr. 18). He also set forth Dr. Zubillaga's opinion that the plaintiff would improve with better sleeping patterns and stretching and strengthening exercises, although he incorrectly attributed that opinion to Dr. Morris, rather than to Dr. Zubillaga (id.). Significantly, the law judge accepted Dr. Zubillaga's less-than-positive diagnostic impression of fibromyalgia. Thus, the law judge appropriately considered Dr. Zubillaga's report.

Furthermore, Dr. Zubillaga's report did not compel the law judge to find that the plaintiff had functional limitations of a sit/stand option or a need to stretch and change positions frequently. The law judge could easily conclude that a need to change positions does not equate to a requirement of

-8-

a sit/stand option. Thus, the law judge could understand a need to change positions as simply avoiding being locked into one position at a desk or bench for an extended period of time. In general, a job involving light work would permit an individual to change positions since it ordinarily involves "a good deal of walking or standing." 20 C.F.R. 404.1567(b), 416.967(b). Thus, a finding that the plaintiff could perform light work would encompass the ability to change positions frequently. Furthermore, a need to stretch periodically would also be accommodated by the finding of an ability to do light work, as well as by the normal work breaks.

In any event, even if Dr. Zubillaga's recommendations are construed as functional limitations and should have been included in a hypothetical question, the failure to do so is harmless error. Clearly, the jobs of dog bather, marker, and packager encompass the ability to change positions frequently and to stretch periodically. Moreover, the plaintiff does not even attempt to demonstrate that she could not perform the jobs identified by the vocational expert (Tr. 424), based on her need to stretch and change positions. The plaintiff's representative furthermore did not question the vocational expert at the hearing as to these limitations (Tr. 425). Therefore,

the plaintiff failed to carry her burden of showing that she is unable to perform the identified jobs. <u>Jones</u> v. <u>Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999); <u>Williams</u> v. <u>Barnhart</u>, 140 Fed. Appx. 932 at *4 (11th Cir. 2005).

The plaintiff also contests the law judge's hypothetical question as it relates to her mental limitations. In particular, she alleges that she is incapable of concentrating or staying on task (Doc. 20, p. 9). The plaintiff's argument is not supported by the medical opinion from Dr. Claudia J. Ressel-Hodan that she cites. As the plaintiff indicates (albeit inaccurately), this examining psychologist opined that, "[d]ue to the level of anxiety and depression Donna is experiencing, her negative emotional state will likely interfere with her being able to function at optimal levels in a training or actual work setting" (<u>id.</u>; <u>see</u> Tr. 163). Importantly, Dr. Ressel-Hodan did not opine that the plaintiff has an inability to concentrate or stay on task or that she was disabled (Tr. 161-63); rather, she simply said that the plaintiff cannot perform at optimal levels due to mental limitations.

The law judge gave significant weight to Dr. Ressel-Hodan's opinions and incorporated her limitations in the plaintiff's residual functional capacity (Tr. 20). Thus, the law judge found that the plaintiff was "limited to

-10-

understanding and remembering only simple instructions and performing only simple tasks in a low stress environment with limited interpersonal interactions" (Tr. 17). This limitation also accommodates Dr. Ressel-Hodan's opinion regarding the plaintiff's underlying social phobia that could precipitate a panic attack (see Tr. 163).

In sum, substantial evidence supports the law judge's finding of the plaintiff's residual functional capacity. The evidence plainly does not compel the conclusion that the plaintiff has greater physical or mental limitations than those found by the law judge. Since the law judge's hypothetical question included the functional limitations that he found to exist, that question is not deficient.

The plaintiff's second argument is that the law judge failed to evaluate properly her subjective complaints (Doc. 20, pp. 9-15). As indicated, the law judge determined that the plaintiff was restricted to light work with the mental limitations just mentioned. In making that determination, the law judge concluded that the plaintiff is not credible and is capable of doing more than she alleges (Tr. 19).

The plaintiff asserts that the law judge's reasons for finding the plaintiff's allegations and testimony not credible were all "either factual or legal error" and that he "fails to discuss at all or minimizes the abnormal findings, doctors opinions, and medical records which support an inability to work" (Doc. 20, p. 10) (emphasis in original). This assertion suggests that the evidence is far stronger in her favor than it actually is. The meager support for her claim of disability is reflected in the fact that no physician or psychologist opined that the plaintiff is disabled.

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of

claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge discussed the medical evidence at length and acknowledged the pertinent standards for assessing the plaintiff's credibility (Tr. 17-20). See Wilson v. Barnhart, supra, 284 F.3d at 1225-26. Moreover, the law judge agreed that the plaintiff's impairments could be expected to produce the alleged symptoms (Tr. 18). In fact, the law judge found that the plaintiff did have pain that limited her to light work. He discounted her complaints of pain, however, to the extent that she claimed that they imposed greater limitations (Tr. 18-19).

The plaintiff asserts that the credibility determination was not supported by substantial evidence (Doc. 20, p. 10). She points first to the medical records from Dr. Morris and Dr. Zubillaga to support her testimony that her neck, low back, and shoulder pain due to fibromyalgia prevent her from working (id., pp. 10-11). It is recognized that it is improper to reject a claimant's testimony based on the lack of objective evidence documenting fibromyalgia. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). That

error, however, did not occur here. As explained, neither Dr. Morris nor Dr.
Zubillaga (who expressed the diagnostic impression of fibromyalgia) opined
that the plaintiff was unable to work, and the plaintiff does not refer to any
other report or opinion supporting an inability to work.

Moreover, the law judge accepted the diagnosis of fibromyalgia
as a severe impairment (Tr. 15). In determining the extent of the pain and the
functional limitations the fibromyalgia and lumbar disc disease caused the
plaintiff, the law judge considered her daily activities, the physicians'
treatment notes, and her testimony. The law judge addressed those
impairments as follows (Tr. 18-19):

> The medical evidence of record does not support
> the claimant's allegations of physical impairments
> that create constant pain and preclude her from
> performing all but minimal exertional activities.
> Physical examination in June 2004 showed normal
> deep tendon reflexes, sensory acuity, and muscular
> strength throughout. Straight leg raising was
> normal. MRI scans of the cervical and lumbar
> areas of the spine showed only mild findings and
> were interpreted by [George] Morris, M.D. to be
> basically normal. He stated that he did not see
> anything that would limit her in her activities
> (Exhibit 4F). Dr. Morris referred the claimant to a
> neurologist and his examination in August 2004
> showed tenderness over some fibromyalgia points.
> There were no sensory abnormalities and gait and

stance were normal. Dr. [Zubillaga] opined that the claimant would improve with improving sleep patterns, strengthening exercises, and stretching exercises (Exhibit 5F). Physical examination in April 2005 showed decreased range of motion over the lumbar spine and positive tender points. However, examination was otherwise within normal limits (Exhibit 12F). The claimant received chiropractic treatment at Congress Chiropractic Clinic. Treatment notes dated January 2006 through May 2007 show that the claimant generally rated her pain at a 3 or 4 out of 10 indicating she was uncomfortable, but her pain was not distressing, severe, or excruciating (Exhibit 20F). Progress notes from Adam Greenfield, D.O. dated May 2006 through April 2007 show that the claimant occasionally complained of musculoskeletal pain. However, notes were very limited and did not show many detailed, objective findings.

The plaintiff's credibility determination, therefore, was not flawed because of an improper evaluation of her fibromyalgia. Moore v. Barnhart, supra; Peters v. Astrue, 2007 WL 1116221 at *6 (11th Cir. 2007) (unpub. dec.); Hennes v. Commissioner of Social Security Administration, 2005 WL 1027242 at *4 (11th Cir. 2005)(unpub. dec.).

Furthermore, the record supports that determination. At the time of the hearing, the plaintiff's four children, aged 22, 19, 17, and 14 and, temporarily, her 17-year-old neighbor, lived with her (Tr. 407-08). The

plaintiff was receiving little treatment despite her assertion that she was suffering disabling pain and, as indicated, Dr. Zubillaga stated that her condition will improve with sleep and exercise (Tr. 179).

Further, in May 2005, the plaintiff went to a gynecologist for an unrelated condition. During her initial visit during a review of her systems, the plaintiff reported with respect to her musculoskeletal system that she had recently been experiencing pain (Tr. 276). Thereafter, through November 2005. during a systems review, the plaintiff on five occasions reported no pain with respect to her musculoskeletal system (Tr. 256, 259, 263, 269, 277).

The law judge also considered reports that the plaintiff and her father submitted concerning daily activities. Thus, the law judge noted that the plaintiff said that she cooks and does light cleaning on a daily basis, while her father said that the plaintiff does light cleaning, cooking, and laundry (Tr. 19). The law judge concluded that these statements are inconsistent with her testimony that the children do all household chores (id.).

There is other evidence in the record as well that refutes the plaintiff's claim that she is virtually house-bound and can engage in only minimal exertional activities. Thus, in December 2006 she was injured in a

-16-

motorbike accident (when she was apparently driving without a license (Tr. 408)). Further, she told a chiropractor that she had been moving a lot of things around at home (Tr. 321) and had been walking a lot (Tr. 293). She reported in 2005 that she was sexually active (Tr. 256). She told a psychologist that she spends her days doing housework, working crossword puzzles, and watching television (Tr. 212). She also told a psychiatrist in November 2004 that she had been out-of-town (Tr. 188).

The plaintiff also asserts, in connection with the credibility determination, that the law judge mischaracterized and exaggerated the extent of her daily activities (Doc. 20, p. 13). She contends that light household chores and taking care of her children should not disqualify her from disability (id., pp. 13-14). To the extent the plaintiff argues that the law judge found her not disabled simply on the basis of her daily activities, that contention is meritless. As indicated, the law judge considered several factors which, taken together, support the credibility determination. It is appropriate, of course, for the law judge to consider plaintiff's daily activities in making his credibility determination. See Wilson v. Barnhart, supra, 284 F.3d at 1226; Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). Indeed, the

regulations direct that a plaintiff's daily activities be considered with respect to complaints of pain. 20 C.F.R. 404.1529(a), 416.929(a).

The plaintiff disputes the law judge's evaluation of her subjective complaints concerning her mental problems. The law judge assessed the plaintiff's mental condition at length, and his explanation for his evaluation was reasonable and supported by substantial evidence (Tr. 19). The law judge noted that the plaintiff does not receive any regular or ongoing mental health treatment and determined that her depression was not debilitating, concluding (id.):

> The lack of evidence regarding mental impairments, combined with the minimal findings noted on consultative psychological evaluations, do not support the claimant's allegations of depression and panic attacks that basically prevent her from functioning outside her home.

Thus, the law judge fully considered the plaintiff's mental impairments. Moreover, as indicated, he imposed substantial restrictions due to mental impairments. The plaintiff has not pointed to any evidence compelling a finding that the plaintiff had greater mental limitations than found by the law judge.

On this issue, the plaintiff contends that the law judge concluded unreasonably that the plaintiff's anxiety and depression were mild (Doc. 20, p. 10). The plaintiff states, generally, that the opinions of primary care physicians Dr. Adam Greenfield, Dr. S. Rao Korabathina, and Dr. Mehul Patel, diagnosing the plaintiff with depression and anxiety, support her contention (id., p. 11). Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not according them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Doctors Greenfield, Korabathina, and Patel prepared no report that resembles a psychiatric evaluation. Moreover, the doctors did not opine that the plaintiff's mental impairment is severe or express any limitations in the areas of activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. Dr. Patel mentioned depression only one time (Tr. 247). Dr. Greenfield's limited and barely

legible notes do not reveal a severe disorder (Tr. 338-43). The plaintiff appears to complain of a mental impairment only once to Dr. Korabathina (Tr. 285-337).

In light of the lack of any psychiatric opinions concerning the plaintiff's mental functional limitations, the plaintiff also seeks to rely upon the only Global Assessment of Functioning (GAF) score in the record. Dr. Sae Song, a psychiatrist, saw the plaintiff three times in connection with Vocational Rehabilitation (Tr. 188-93). Dr. Song assigned the plaintiff a score of 50-55 on her first visit and diagnosed her with Major Depressive Disorder (Tr. 190, 193). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)" (id.). A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or

school functioning (e.g., few friends, conflicts with peers or co-workers)"
(id.).

The plaintiff's attempted reliance upon the GAF score is unpersuasive for several reasons. In the first place, a GAF score is of limited, if not questionable, value. See Wind v. Barnhart, 2005 WL 1317040 at *6 n. 5 (11ᵗʰ Cir. 2005)(unpub. dec.); DeBoard v. Commissioner of Social Security, 2006 WL 3690637 at *3-4 (6ᵗʰ Cir. 2006)(unpub. dec.). Moreover, a single GAF score does not provide solid evidence of a severe mental impairment. See DeBoard v. Commissioner of Social Security, supra, 2006 WL 3690637 at *5. Consequently, Dr. Song's GAF score of 50-55 merely reflects the psychiatrist's observation of the plaintiff on one day. Dr. Song provided no GAF score for two follow-up visits and those notes are limited (Tr. 188, 189). Furthermore, Dr. Song's most recent report states that the plaintiff should be reevaluated in four weeks (Tr. 188). The plaintiff, apparently, did not return to Dr. Song nor did she seek additional help for her mental impairment.

The evidence, in short, supports the law judge's credibility determination with respect to the plaintiff's mental impairment. The plaintiff

certainly has not shown that the record compels a reversal with regard to his credibility determination of her mental impairments. Adefemi v. Ashcroft, supra, 386 F.3d at 1027.

The plaintiff argues, third, that the law judge failed to assign limitations due to pain from her fibromyalgia (Doc. 20, pp. 15-16). This contention has previously been addressed and rejected.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 16th day of March, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE